UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>Gabhaltais Teaghlaigh LLC<br><br>                     Debtor. | Chapter 11<br>Case No. 22-10839-EDK |

**GABHALTAIS TEAGHLAIGH, LLC'S OPPOSITION TO MOTION BY JASPAL GILL
TO CONVERT DEBTOR'S CHAPTER 11 CASE TO CHAPTER 7**

**I.        Introduction**

Gabhaltais Teaghlaigh LLC, the Debtor in Possession in the above-captioned Chapter 11 case (the "Debtor"), hereby opposes the Motion by Jaspal Gill ("Gill") to convert Debtor's Chapter 11 case to Chapter 7 (the "Motion"). The Motion is nothing more than a transparent attempt to try to remove Special Counsel (Bernkopf Goodman LLP)[1] appointed to assist Debtor in resolving competing claims and priorities affected by the avoided foreclosure sale of the Debtor's Real Property (defined *infra*). More specifically, Special Counsel was charged with resolving disputes surrounding <u>three</u> potential mortgages against Debtor's real property located at (a) 47 Old Harbor Street, South Boston, Massachusetts; (b) 283 West Fifth Street, South Boston, Massachusetts: (c) 193 Randolph Street, Weymouth, Massachusetts; and (d) 15 Simms Court, Newton, Massachusetts (the "Real Property").

At present, the claims surrounding the Synergy Mortgage have been resolved by virtue of this Court's allowance of Debtor's Motion for Order Approving Stipulation with Synergy Funding, LLC ("Synergy"). Docket No. 557. The second issue relates to a 2017 mortgage to

---

[1] And Anne Brensley ("Brensley"), the general partner of DevCo North America LP ("DevCo"), who are authorized to act as Debtor's property managers.

East Boston Savings Bank (the "Rockland Mortgage")[2], which is currently held by secured creditor, OHP, LLC ("OHP").  The Rockland Mortgage is the subject of a pending Motion to Determine the Amount to Pay Secured Creditor OHP Pursuant to Bankruptcy Rule 3012 (Docket No. 572) ("Motion to Determine Payment"), which is scheduled to be heard by the Court on April 16, 2026 (Docket No. 573).  In addition, Debtor recently paid OHP the sum of $1,032,595.14 to pay down the Rockland Mortgage pursuant to this Court's Order dated March 6, 2026 (Docket No. 564).  The third, and sole remaining issue once the Motion to Determine Payment is resolved, relates to a July 2022, mortgage from OHP to Gill in the original amount of $2,510,000.00 (the "Gill Mortgage").  Debtor was not a party to the Gill Mortgage, Gill has not filed a proof of claim in this bankruptcy, and Gill was afforded relief from stay (Docket No. 556) to foreclose the Debtor's sole remaining Real Property located at 193 Randolph Street, Weymouth, Massachusetts ("Weymouth Property").  The Gill Mortgage is the subject of a pending Adversary Proceeding No. 26-1008 to which Gill has already responded and to which this Court has already set a Scheduling and Pretrial Order (the "Adversary Proceeding").

Given the above, it is evident that Gill, which shares a relationship with OHP, does not wish to have the two remaining issues resolved via the Motion to Determine Payment and the Adversary Proceeding.  Gill now realizes that its relief from stay is a hollow victory as it cannot deliver good, clear, and marketable title to a potential buyer of the Weymouth Property.  As a result, it improperly seeks to convert this bankruptcy to Chapter 7 with the hope that the Weymouth Property will be sold by a Chapter 7 trustee and that the trustee will abandon the Adversary Proceeding.  Given the above, and fact that cause does not exist under 11 U.S.C. §

---

[2]  Rockland Trust Company is the successor by merger to East Boston Savings Bank.

1112(b), especially as the Weymouth Property is income producing and Debtor's property manager intends to have it continue to produce income for the Debtor's Estate while the Motion to Determine Payment and the Adversary Proceeding are resolved, the Motion should be denied.

## II.     Background

1.     On June 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§1101, et. seq.), commencing case no. 22-10839 in the United States Bankruptcy Court for the District of Massachusetts (the "Court").

2.     The Debtor continues to manage and operate its business as a debtor-in-possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code.

3.     On August 10, 2022, the Court authorized the Debtor's employment of Brensley and DevCo to act as property managers and estate fiduciaries (Docket No. 64).

4.     Prior to the Petition Date, the Debtor was the record owner of the Real Property.

5.     As of the Petition Date, the Real Property was subject to four mortgages of record, of which only two remain at issue: (a) the Rockland Mortgage held by OHP; and (b) the Gill Mortgage.

6.     On or about July 7, 2022, OHP took possession (and management) of the Real Property, including receipt of all rents, income, and profit. *See* Declaration of Anne Brensley (the "Brensley Declaration") previously filed with this Court (Docket No. 572, Exhibit E, ¶ 6).

7.     On March 29, 2024, the Court entered a partial judgment in Adversary Proceeding No. 22-1040 (the "Judgment").  The Judgment held that:

> The transfer of the equity of redemption held by Gabhaltais Teaghlaigh LLC in real properties located at (a) 47 Old Harbor Street, South Boston, Massachusetts; (b) 193 Randolph Street, Weymouth, Massachusetts; (c) 283 West Fifth Street, South Boston, Massachusetts; and (d) 15 Simms Court, Newton, Massachusetts through the foreclosure sale of those properties  that was conducted on June 15, 2022 is hereby AVOIDED pursuant

to 11 U.S.C. § 544(a)(3).

8.   On May 30, 2025, the Court entered an Order (Docket No. 439) approving the retention of Commonwealth Realty Group, LLC d/b/a Berkshire Hathaway HomeServices Commonwealth Real Estate (Berkshire Hathaway) as broker to sell the Real Property.

9.   On August 11, 2025, the Court entered orders (Docket Nos. 469,470, 471 and 472) authorizing the sale of the Real Property to Howard Cohen or his nominee and, with respect to the Weymouth Property, to the 193 Randolph Realty Trust.  Each of the orders stated that the sales were to be "free and clear of all liens, claims, interests, and other encumbrances whatsoever, both known and unknown, including but not limited to, those asserted liens, claims, interests, and encumbrances to which reference is made in the Sale Motion" and that "[s]aid liens, claims, interests and other encumbrances, if any, shall attach to the proceeds of the sale with the same priority and validity as existed prior to the sale according to priorities established under applicable law."

10.   On August 29, 2025, the Debtor delivered deeds to 47 Old Harbor Street and 283 West 5th Street to Brent Herbert (as assignee of Howard Cohen) and 15 Simms Court to Nehoc New Investments LLC (as assignee of Howard Cohen).  The deeds were recorded on August 29, 2025, and the Debtor has received the net proceeds from each of the sales, in the amounts of $1,311,014.26 (47 Old Harbor Street), $921,982.52 (283 West 5th Street) and $611,659,71 (15 Simms Court), or a total of $2,844,656.49.  *See* Docket No. 486 (Status Report by Debtor).

11.   Notwithstanding the prior sale Order regarding the Weymouth Property (Docket No. 477), the buyer (193 Randolph Realty Trust) failed to pay the $350,000.00 Purchase Price and no sale was consummated.

12.   The Weymouth Property is single-family home that was rented for the sum of

4

$2,500.00 per month and has recently been re-leased for one year for the monthly sum of $2,650.00 effective May 1, 2026, by Debtor's property managers.  After paying taxes, insurance, and any associated maintenance, the Weymouth Property is cash positive and nets approximately $1,800 per month for the Debtor's estate. At present, Debtor intends to keep the income-producing Weymouth Property, which is in the best interests of the Debtor's estate, pending at least resolution of the Motion to Determine Payment and the Adversary Proceeding.  In the interim, Gill has already been afforded relief from stay to foreclose the Weymouth Property and Debtor reserves all rights relating thereto.[3]

13.   As noted above, the Rockland Mortgage is the subject of the pending Motion to Determine Payment, which is scheduled to be heard by the Court on April 16, 2026 (Docket No. 573).  By Order dated March 6, 2026 (Docket No. 564), this Court also permitted Debtor to pay OHP the sum of $1,032,595.14 towards satisfaction of the Rockland Mortgage Claim.  As set forth in the Brensley Declaration previously filed with this Court (Docket No. 572, Exhibit E, ¶ 22), on March 17, 2026, Debtor processed a wire in the amount of $1,032,595.14 to OHP.

14.   As noted above, the Gill Mortgage is the subject of the pending Adversary Proceeding to which Gill has already responded and to which this Court has already set a Scheduling and Pretrial Order.

15.   Upon resolution of the Motion to Determine Payment and the Adversary Proceeding, this bankruptcy will be closed pursuant to a Plan of Reorganization or Debtor may file a Motion to

---

[3] Gill goes to great lengths to demonstrate that the MLS listing for the Weymouth Property shows its status as "Under Agreement," but such a fact is irrelevant.  The prior Sale Order is no longer in effect and the Debtor desires to keep the income-producing Weymouth Property as part of a reorganization.  Nevertheless, DevCo has requested that Berkshire Hathaway simply remove the listing from MLS pending further instructions from the Court.

Dismiss assuming the Debtor's Estate has sufficient funds to satisfy the Rockland Mortgage, which is expected.  Debtor has made provisions for, or satisfied, all other creditors.

### III.   Argument

In the first instance, Gill failed to comply with the requirements of MLBR 1017-1, which should result in the Motion being denied without prejudice.  MLBR 1017-1(a) provides, in pertinent part, that:

> Prior to filing any motion to dismiss or convert a chapter 11 case … the attorney for the prospective moving party … shall have a conference, by telephone or in person, with the debtor-in-possession's attorney or the attorney for the chapter 11 trustee, if any, in a good faith effort to resolve the moving party's asserted grounds for dismissal or conversion, and to eliminate as many areas of dispute as possible without the necessity of filing a motion.

MLBR 1017-1(a) further provides that: "[a]ny motion filed under this Rule shall contain, or be accompanied by, a statement that the moving party has complied with the provisions of this section, specifying the time, date, and manner of any conference held prior to filing the motion, and certifying the issues left unresolved."  As no such conference occurred, and no certificate has been filed in compliance with the rule, the Motion should be denied without prejudice.

Substantively, the Motion fails as "cause" does not exist under 11 U.S.C. § 1112(b)(4) to convert the case.  "What constitutes cause for dismissal of a Chapter 11 case is a matter of judicial discretion under the circumstances of each case." *In re Anderson*, 52 B.R. 159, 162 (Bankr. D.N.D. 1985).  Nevertheless, the statute sets forth certain enumerated "causes" that might satisfy the requirements of Section 1112(b)(4), subject to judicial discretion, that generally cover egregious situations such as (A) diminution of the estate, (B) gross mismanagement, (C) failure to maintain insurance, (D) unauthorized use of collateral, and other material defaults, none of which are present in this case.

In the case at bar, Gill improperly alleges at the outset that cause exists for "lack of a reorganization purpose" as Debtor has a liquidation strategy (Motion, p. 1).  Such a cause is not enumerated in Section 1112(b)(4).  In addition, the fact that Debtor might file a liquidation plan or utilize partial liquidation as part of its reorganization strategy is expressly permitted under 11 U.S.C. § 1123 (noting a plan can include "sale of all or any part of the property of the estate").  Thus, Debtor's utilization of a partial (or full) liquidation strategy is an insufficient ground for conversion because the submission of such a plan is proper under Chapter 11.  "Further, some courts have ruled that when reorganization no longer remains a viable option, conversion should not be ordered when liquidation would proceed more expeditiously and less expensively under control of the debtor." *In re Denrose Diamond*, 49 B.R. 754, 757 (Bankr. N.Y.S.D. 1985), citing *In the Matter of W.J. Rewoldt Co. Inc.,* 22 B.R. 459, 462 (Bankr. E.D. MI. 1982).

Moreover, Gill's claim that Debtor intends to liquidate all assets is factually inaccurate.  As noted above, the remaining Weymouth Property will be the catalyst for reorganization.  The Weymouth Property was recently re-leased at a higher rent of $2,650.00 effective May 1, 2026, and remains income producing with a positive cash flow of approximately $1,800 per month.  Such positive cash flow benefits the Debtor's estate and retaining the Weymouth Property is presently in the Debtor's estate's and its creditors' best interests.  Based upon this Court's determination that Debtor retained its equity of redemption in the Real Property, the sale of the first three properties and Debtor's resolution of certain creditor claims, Debtor believes it has sufficient funds to satisfy all creditors without the need to sell the remaining Weymouth Property.

As further ground for conversion, Gill asserts that it is required due to unreasonable delay as Debtor has not yet filed a viable plan.  As the Court is familiar, this bankruptcy has a long history due, in part, to resolution of the underlying issue surrounding Debtor's equity of redemption,

7

OHP's appeal of that decision, and OHP's failure to turn over possession and control of the Real

Property to Debtor.  Once resolved, Debtor timely sought to retain a broker, listed the Real

Property for sale, completed the sale of three properties, and resolved certain creditor claims

relating to the Real Property.  Debtor also brought in Special Counsel to assist it with resolving the

competing claims and priorities affected by the avoided foreclosure sale of the Debtor's Real

Property.  To that end, the Motion to Determine Payment and the Adversary Proceeding are all

that substantively remain before a final reorganization plan or a motion to dismiss can occur.

"Where there is a reasonable prospect of a successful rehabilitation a motion to convert under

section 1112(b)(1) must be denied."  *In re Garland Corp.*, 6 B.R. 456, 460 (Bankr. 1st Cir. BAP

1980) (citations omitted).  Now that the legal issues surrounding Debtor's equity of redemption

are resolved, the claims by Synergy are resolved, almost all creditor claims are resolved, and the

two remaining issues are being addressed in the Motion to Determine Payment and the Adversary

Proceeding, this bankruptcy can finally be concluded with a proper reorganization plan or,

depending on the outcome of the two remaining issues, a potential dismissal.  Put simply, there is

no need or justification for conversion.

Even assuming, *arguendo*, that cause existed sufficient for this Court to exercise its judicial

discretion, the Court should find that there are "unusual circumstances establishing that converting

or dismissing the case is not in the best interests of creditors and the estate" in this case.  11 U.S.C.

§ 1112(b)(2).  Given the long history of this dispute, and fact that there exists a simple path to

resolution that has already been implemented by Debtor, conversion of this case will not promote

judicial efficiency, nor would it benefit the Debtor's estate.  *In re Sheehan*, 58 B.R. 296, 299

(Bankr. S.D. 1986) ("the court may use its equitable powers to reach an appropriate result in

individual cases" for conversion).  In fact, Gill is not even a creditor of the Debtor's estate, has not

filed a proof of claim, and has relief from stay to proceed to foreclose the Weymouth Property. Yet, Gill has not commenced any foreclosure action, nor could he practically as he cannot deliver good title to any prospective purchaser.  Rather, Gill's Motion is an end-around designed to remove DevCo, Brensley, and Special Counsel with the hope that a Chapter 7 trustee might choose to liquidate the Weymouth Property.  This is why Gill's Motion does not seek the alternate relief of dismissal as the claims in the Adversary Proceeding would then simply be filed in state court and he could still not foreclose on the Weymouth Property given the title dispute. As such, the Motion should be denied.

### IV.    Conclusion

Based upon the foregoing, Debtor Gabhaltais Teaghlaigh, LLC requests that the Court deny the Motion by Jaspal Gill to Convert Debtor's Chapter 11 Case to Chapter 7, and grant such other and further relief as is just and necessary.

<table>
<tr><td></td><td>Gabhaltais Teaghlaigh, LLC<br>By its attorneys,</td></tr>
<tr><td>Dated:  April 9, 2026</td><td></td></tr>
<tr><td></td><td>/s/<i>Joseph G. Butler</i><br>Joseph G. Butler, Esq. (BBO# 544284)<br>Law Office of Joseph G. Butler<br>355 Providence Highway<br>Westwood, MA 02090<br>(781) 636 3638<br>JGB@jgbutlerlaw.com</td></tr>
<tr><td></td><td>/s/ <i>Jason A. Manekas</i><br>Jason A. Manekas, Esquire (BBO No. 632073)<br>Bernkopf Goodman, LLP<br>Two Seaport Lane - 9th Floor<br>Boston, Massachusetts 02210<br>Telephone: (617) 790-3000<br>E-mail: jmanekas@bernkopflegal.com</td></tr>
</table>