UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>**Gabhaltais Teaghlaigh LLC**<br>Debtor. | Chapter 11<br>Case No. 22-10839-EDK |

## SUPPLEMENTAL RESPONSE OF OHP LLC AS TO ITS CALCULATION OF THE PAYOFF FOR THE FIRST MORTGAGE LOAN HELD BY OHP LLC

NOW COMES the creditor, OHP LLC ("OHP"), and pursuant to this Court's order dated July 9, 2026 (Docket #630) files this supplemental response as to OHP's calculation of its' first mortgage loan payoff at issue herein. Per the Court's said order, OHP and Gabhaltais Teaghlaigh ("GabTeag") will file a joint document on or before July 30˙ 2026, setting forth each parties payoff for the first mortgage at issue. OHP's payoff will include compound interest and expectedly GabTeag's payoff will be have simple interest. OHP incorporates herein its prior filings as to the payoff of the first mortgage at issue herein.

OHP submits that the First Circuit Court's decision of *Berman v. B.C. Assocs.*, 219 F.3d 48 (2000) controls whether or not compound interest is to be allowed herein. A copy of the decision is attached as Exhibit A. *Berman* provides, in part, that compound interest is only to be allowed if the promissory note expressly provides for compounding of interest. *Id.* at 50. As set forth hereafter, the promissory note at issue expressly sets forth that interest is to be compounded and therefore under Berman this Court should find that the compounding of interest in the payoff by OHP is proper.

Attached as Exhibit B is a copy of the first mortgage promissory note ("Note").   The Note contains an express default provision that alters the interest-bearing base in the Note. During the non-defaulted/standard term of the loan, the Note explicitly dictates that simple interest is charged only on the **"unpaid principal balance."**  See page 1, section entitled "Interest Rate." However, under the Note section entitled "Failure to Pay and Perform Obligations," pages 4- 5, the parties expressly agree to a different mechanism as to interest calculation upon default.  In said section it is set forth that "... *interest on **all outstanding amounts** shall accrue at an annual rate equal to five percentage points (5%) above the Interest Rate."* (emphasis added) See page 5. OHP submits that "all outstanding amounts" in said section cannot be read as identical to "unpaid principal balance," or the shift in terminology would be meaningless. "Outstanding amounts" naturally encompasses accrued unpaid interest, etc.  Because the Note explicitly mandates that interest accrue on "all outstanding amounts" post-default, that necessarily includes the outstanding amount of accrued interest.  So the promissory note calls for the compounding of interest during the period of default.

WHEREFORE, John F. White, Esq., co-counsel for OHP requests that the Court:

1. Approve the payoff to be submitted by OHP; and

2. Order such other relief that the Court deems proper.

Respectfully submitted,
OHP LLC,  Creditor,
By its attorney,

__/s/ John F. White_____
John F. White, Esq. BBO# 558367
jwhite@lipmanwhite.com
Lipman & White
171 Rockland Street, Ste. 201
Hanover, MA 02339
Tel. 781-924-5678

## CERTIFICATE OF SERVICE

I, John F. White, attorney for OHP, LLC certify that copy of this SUPPLEMENTAL

RESPONSE OF OHP LLC AS TO ITS CALCULATION OF THE PAYOFF FOR THE

FIRST MORTGAGE LOAN HELD BY OHP LLC  has been served by the CM/ECF system

on July 23, 2026, thereby providing electronic notice to all ECF participants in this case


__/s/ John F. White_____
     JOHN F. WHITE, ESQ.,

# EXHIBIT A

# Berman v. B.C. Assocs.

United States Court of Appeals for the First Circuit

August 2, 2000, Decided

No. 99-2175

**Reporter**
219 F.3d 48 *

DAVID BERMAN, Plaintiff, Appellee, FHS PROPERTIES LIMITED PARTNERSHIP, BY ITS GENERAL PARTNER, FORT HILL LAND COMPANY, Plaintiff, Appellant, v. B.C. ASSOCIATES; BC PHASE 2 ASSOCIATES LIMITED PARTNERSHIP; DONALD J. CHIOFARO, AS GENERAL PARTNER IN BC ASSOCIATES AND BC PHASE 2 ASSOCIATES LIMITED PARTNERSHIP; THEODORE OATIS, AS GENERAL PARTNER IN BC ASSOCIATES AND BC PHASE 2 ASSOCIATES LIMITED PARTNERSHIP, Defendants, Appellees.

**Prior History:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS. Hon. Morris E. Lasker, [1] Senior U.S. District Judge.

**Disposition:** Reversed and remanded.

**Counsel:** Mitchell H. Kaplan, with whom Kathleen A. Burdette and Choate, Hall & Stewart were on brief, for appellant.

John D. Donovan, Jr., with whom Randall W. Bodner, Justin J. Wolosz and Ropes & Gray were on brief, for appellees B.C. Associates, et al.

**Judges:** Before Torruella, Chief Judge, Lipez, Circuit Judge, and Keeton, [2] District Judge.

**Opinion by:** TORRUELLA

# Opinion

[*49] **TORRUELLA, _Chief Judge._** This is an appeal from the final judgment of the United States District Court for the District of Massachusetts, issued on remand following a prior appeal to this Court, declaring that the "Deficit Loan" made by BCA [3] to Fort Hill Square Associates accrued **_compound interest_**. FHS Properties Limited Partnership contests the award of **_compound_**, rather than **_simple_**, **_interest_**. For the reasons discussed below, we agree with the appellant that the district court's award of **_compound interest_** was in error.

## BACKGROUND

The facts of this case were thoroughly laid out by this Court in _FHS Properties Ltd. Partnership v. BC Associates_, 175 F.3d 81, 82-84 (1st Cir. 1999). Due to the narrow scope of this second appeal, we need not rehash the complicated details of the structure and history of the real estate development project that is the basis for this suit. For our purposes, it is only relevant that BCA and FHS are the managing partners of two partnerships that

---

[1] Of the Southern District of New York, sitting by designation.

[2] Of the District of Massachusetts, sitting by designation.

[3] The appellees are BC Associates ("BCA-1"), BC Phase 2 Associates Limited Partnership ("BCA-2"), and Donald Chiofaro and Theodore Oatis, the general partners of BCA-1 and BCA-2. We will refer to them collectively as BCA.

developed and now own International Place, a two-tower office complex in downtown Boston. The project was planned in two phases, one for each tower, with two separate and distinct partnerships. In April 1991, BCA paid $ 5.6 million, from its own funds, to settle a law suit brought against the first partnership by certain limited partners who challenged the financing of the second phase of the project.

FHS brought this action to clarify whether BCA's settlement payment was a partnership expense. The district court concluded that BCA was entitled to indemnification payments from the partnership in the amount of $ 2.1 million, accruing interest at 6% per annum. However, in *FHS Properties*, we held that BCA's payment met the conditions of a "deficit loan" under the partnership agreement, which among other things entitled BCA to interest at a rate of 18% per annum. *See id.* at 86-87. Accordingly, we reversed the district court's judgment and remanded for proceedings consistent with our opinion.

[*50] FHS then moved for the district court to enter final judgment specifying whether the interest on the deficit loan would be simple or compound. The deficit loan provision provides only that such loans "shall bear interest at an annual rate which is two percentage points above the so-called 'Prime rate' . . . or at 18% per year, whichever is greater."

After a brief discussion of Massachusetts law [4] relating to the availability of **compound interest**, and without any discussion of the facts of the case, the district court concluded that the **interest** should be **compounded**, "because compounding is the equitable means of fully compensating a creditor-partner under the Deficit Loan provision." *FHS Props. Ltd. Partnership v. BC Assocs.*, No. 94-CV-11346-MEL, slip. op. at 2 (D. Mass. Aug. 26, 1999).

## DISCUSSION

The appellant challenges the district court's award of **compound interest**, arguing that under Massachusetts law, a court does not have discretion to award **compound interest** in the absence of an express provision in the contract. The appellee acknowledges this general rule but contends, however, that there is an equitable exception that was rightfully invoked in this case where FHS behaved inequitably.

Whether Massachusetts law permits a court to fashion an equitable remedy of **compound interest** on a contractual debt is a question of law, which is, therefore,  subject to de novo review. *See Negron v. Caleb Brett U.S.A., Inc.*, 212 F.3d 666, 668 (1st Cir. 2000); *New England Mut. Life Ins. Co. v. Baig*, 166 F.3d 1, 3 (1st Cir. 1999). Because we conclude that Massachusetts law does not permit the award of **compound interest** in a case such as this, when the partnership agreement specifies an interest rate per annum, we need not address whether the comparative equities of the parties support the district court's exercise of discretion in awarding **compound interest**.

In Massachusetts, **compound interest** is generally disfavored. *See Ellis v. Sullivan*, 241 Mass. 60, 134 N.E. 695, 697 (Mass. 1922) (recognizing an "'ancient unwillingness to allow **compound interest**'" (quoting *Lewin v. Folsom*, 171 Mass. 188, 50 N.E. 523, 524 (Mass. 1898))). As early as 1906, the Supreme Judicial Court of Massachusetts decreed that **interest** is **simple**, "unless there is an express agreement to the contrary." *Inhabitants of Tisbury v. Vineyard Haven Water Co.*, 193 Mass. 196, 79 N.E. 256, 257 (Mass. 1906); *see also Coupounas v. Madden*, 401 Mass. 125, 514 N.E.2d 1316, 1321 (Mass. 1987); *Von Hemert v. Porter*, 52 Mass. 210, 218 (Mass. 1846); *D'Annolfo v. D'Annolfo Constr. Co.*, 39 Mass. App. Ct. 189, 654 N.E.2d 82, 85 (Mass. App. Ct. 1995). Consequently, **compound interest** is only permitted in certain proceedings in equity or by express statutory or contractual authority. *See Dunne v. City of Boston*, 41 Mass. App. Ct. 922, 671 N.E.2d 518, 520 (Mass. App. Ct. 1996); *see also Shapiro v. Bailen*, 293 Mass. 121, 199 N.E. 315, 316 (Mass. 1936) (recognizing exception in equity); *Ellis*, 134 N.E. at 697 (same).

---

[4] Section 21 of the Partnership Agreement expressly provided that the interpretation of its terms is governed by Massachusetts law.

It is undisputed that the deficit loan provision in the partnership agreement does not expressly provide for the *compounding* of *interest*. Indeed, it provides only that a deficit loan "shall bear interest at an annual rate . . . [of no more than] 18% per year." Furthermore, the overwhelming majority of Massachusetts cases equate an interest rate "per annum," whether in a contract or a statute, with *simple interest*. *See, e.g., Coupounas*, 514 N.E.2d at 1322; *De Cordova v. Weeks*, 246 Mass. 100, 140 N.E. 269, 269-70 (Mass. 1923); *Tisbury*, 79 N.E. at 257; *D'Annolfo*, 654 N.E.2d at 85. *But see Ellis*, 134 N.E. at 696-97 (allowing *compound interest* at stated rate per annum in equity proceeding [\*51] where debtor deliberately withheld interest payments). Thus, the designated interest rate of "18% per year," construed in its "usual and ordinary sense," *Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 675 N.E.2d 1161, 1164 (Mass. 1997) (citing *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 439 N.E.2d 234 (Mass. 1982)), unambiguously indicates that the deficit loan accrues *simple interest*. The parties to the partnership agreement would, therefore, reasonably have expected the deficit loan provision, as drafted, to call for *simple interest*.

We are not moved by the appellee's contention that such a reading of the provision unfairly penalizes BCA because the loan repayment will come, in part, from its own partnership profits. Such is necessarily, and thus foreseeably, the circumstance with every deficit loan by its terms, and the provision could have been drafted accordingly to provide for *compound interest*. We enforce the contract as written, and "'are not free to revise or change'" it. *Hakim*, 675 N.E.2d at 1164 (quoting *Continental Cas. Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 461 N.E.2d 209 (Mass. 1984)); *see also Alison H. v. Byard*, 163 F.3d 2, 6 (1st Cir. 1998) (quoting *Liberty Mut. Ins. Co. v. Gibbs*, 773 F.2d 15, 17 (1st Cir. 1985)). Thus, as a matter of contract law, the award of *compound interest* was in error.

Nevertheless, the appellee argues that *compound interest* was appropriate in this case because the jury found FHS's conduct to be inequitable. To that end, the appellee argues that equitable principles governed this case from the beginning, and that this Court should look to equity and not contract for just compensation. For support, the appellee directs the Court to its Answer, its submissions of special verdict questions for the jury, and the language of the district court's Memorandum and Decision to award *compound interest*.

After a thorough review of the record and briefs, we cannot agree. BCA's position throughout the trial was that the $ 5.6 million settlement payment qualified as a deficit loan under the terms of the partnership agreement. Only as an afterthought, once the case had been submitted to the jury, did BCA raise the issue of *compound interest* as a matter of equity.

Furthermore, we are not convinced that the district court reached the decision that *interest* should be *compounded* as a matter of equity. To be sure, the district court used the word "equitable" in its conclusion. However, there is no subsequent analysis of the equities of the case to support the appellee's contention that the award of *compound interest* was based on FHS's misconduct. Absent a discussion of the equities, the more plausible reading of the opinion is that the court was interpreting and applying the terms of the deficit loan provision.

In any event, accounting for "equitable considerations" does not convert a contract action to one in equity. We have not been presented with any authority establishing that the district court had the discretion to depart from the terms of the contract based on equitable considerations. The majority of cases on which the appellee relies for the proposition that a court has discretion to award *compound interest* involve proceedings in equity. *See Chokel v. First Nat'l Supermarkets, Inc.*, 421 Mass. 631, 660 N.E.2d 644, 652 (Mass. 1996) (appraisal); *Sarrouf v. New England Patriots Football Club, Inc.*, 397 Mass. 542, 492 N.E.2d 1122, 1129 (Mass. 1986) (appraisal); *Shapiro*, 199 N.E. at 315 (bill in equity to restrain foreclosure); *Ellis*, 134 N.E. at 696 (accounting). We are aware of only two *compound interest* cases that originate in the enforcement of contracts, *Buckley & Scott Utilities v. Petroleum Heat & Power Co.*, 313 Mass. 498, 48 N.E.2d 154 (Mass 1943), and *Howes v. Warren*, 321 Mass. 475, 73 N.E.2d 834 (Mass. 1947). In neither case, however, was the district court called upon to interpret and apply a provision of a contract, and they are, therefore, inapplicable.

[\*52] *Buckley* involved an exclusive franchise agreement, but the action itself was deemed an action in equity to recover damages. *See Buckley*, 48 N.E.2d at 156. The trial court concluded that the defendant violated its obligations under the franchise agreement and proceeded to assess the value of the damages. The Supreme

219 F.3d 48, *52

Judicial Court of Massachusetts affirmed the award of **_compound interest_** on the judgment dating back to the date of the writ, in part relying on a Massachusetts statute, G.L. ch. 235, § 8, that set the conditions for computing interest on a judgment. *See id.* at 160. Thus, the award and interest was set by the court and did not originate in the terms of the contract, as it does in this case.

In *Howes*, a contractor sued to recover for labor and materials expended in the alteration and repair of the defendant's house. *See Howes*, 73 N.E.2d at 834. The defendant challenged an auditor's assessment of the fair value of the contractor's work. Although the trial court agreed with the defendant that the auditor's assessment was unjustified, the court revalued the contractor's work based on the auditor's subsidiary findings and awarded judgment for the plaintiff plus **_interest compounded_** as of the date of the filing of the writ. *See id.* at 835. Relying on *Buckley*, the Supreme Judicial Court affirmed the order for **_compound interest_** paid on the court's judgment to the plaintiff. Again, the court's issuance of a one-time award plus interest stands in sharp contrast to the enforcement of the deficit loan provision and its stipulated interest rate.

In summary, whether the district court was accounting for equitable considerations or was interpreting the terms of the deficit loan provision, it erred as a matter of law in awarding **_compound interest_**.


## CONCLUSION

Because there is no authority to depart from the general rule that **_compound interest_** shall not be allowed unless expressly stated in the agreement, and because it is undisputed that the partnership agreement does not provide for **_compound interest_**, we conclude that the award of **_compound interest_** in this case was improper. The district court's judgment is **reversed** and **remanded** for proceedings consistent with this opinion. Costs against the appellee.

---

End of Document

# EXHIBIT B

# ⊕ East Boston Savings Bank®

Ten Meridian Street, East Boston, MA 02128 (617) 567-1500

## FIVE YEAR ADJUSTABLE RATE MORTGAGE NOTE – COMMERCIAL
July 10, 2017

**BORROWER:**  Gabhaltais Teaghlaigh LLC

**PRINCIPAL:**  Five Million Nine Hundred Thousand ($5,900,000.00) Dollars

**MORTGAGED PROPERTY:**  (i) 47 Old Harbor Street, South Boston, MA 02127, (ii) 3 Grimes Street, South Boston, MA 02127, (iii) 20 Grimes Street, South Boston, MA 02127 (iv) 249 Dorchester Street, South Boston, MA 02127, (v) 272 West Fifth Street, South Boston, MA 02127, (vi) 283 West Fifth Street, South Boston, MA 02127, (vii) 6 - 6 ½ O Street, South Boston, MA 02127, (viii) 398 West Broadway, South Boston, MA 02122, (ix) 15 Simms Court, West Newton, MA, 02465, (x), 193 Randolph Street, Weymouth, MA 02190, and (xi) 35-37 Fenton Street, Dorchester, MA 02122

**MATURITY DATE:**  July 10, 2047

## INTEREST RATE:

Interest on the loan evidenced hereby (the "Loan") will initially accrue and be payable monthly in arrears at the annual interest rate of Four and One-Half (4.50%) Percent for the first sixty (60) months of the term of the Loan. Thereafter, the interest rate will be adjusted in accordance with the terms of this Agreement and the Note. Commencing forty-five (45) days prior to July 10, 2022 and forty-five (45) days prior to each five (5) year anniversary of such date (the "Change Dates"), the ARM Margin of 2.50% shall be added to the Five year Federal Home Loan Bank Board (FHLBB) Regular Borrowing Rate in effect at such time, as made available by the Federal Home Loan Bank Board (the "Index"), rounded to the nearest 1/8%, which result shall then be the annual interest rate at which interest will be charged on the unpaid principal balance of the Loan. The Federal Home Loan Bank Board (FHLBB) index is available

1

daily at www.FHLBBoston.com. The effect of an interest rate change on the Change Dates will be an increase or decrease in the monthly payment amount for each sixty (60) month period.

## PAYMENT SCHEDULE:

The first sixty (60) consecutive monthly payments of principal and interest shall be in the amount of **$30,113.93**. The first scheduled payment is due on **August 10, 2017** and thereafter all payments of principal and interest under this Note shall be due and payable on the same day of each succeeding month. Upon each Change Date, the payment will adjust based on a continuing thirty (30) year direct reduction amortization schedule. All payments will be applied first to the payment of interest, fees, expenses and other charges, then to principal. Following each Change Date, the outstanding principal of the Loan will be re-amortized and the Holder shall inform the Borrower of the resulting monthly payment of principal and interest. In all events, the Borrower shall make a final payment of the entire unpaid principal balance of the Loan plus all accrued and unpaid interest thereon and all other amounts payable with respect to the Loan on the Maturity Date.

## PROMISE TO PAY:

FOR VALUE RECEIVED, the Borrower promises to pay to the order of EAST BOSTON SAVINGS BANK (the "Bank"), a Massachusetts bank, at its office at Ten Meridian Street, East Boston, Massachusetts 02128 (or to such other person(s) or at such other place(s) as the Holder of this promissory note (the "Note") may from time-to-time designate in writing) the Principal, or so much thereof as may have been advanced, with interest until full payment at the interest rate in effect from time to time (except as otherwise stated in this Note).

The Borrower promises to make payments as set forth in the Payment Schedule until the Maturity Date, and on the Maturity Date to pay all outstanding principal, all accrued interest and any other amount(s) due under this Note. All payments will be applied first to interest then to other charges accrued to the payment due date, and any balance to principal. The "Holder" is each person who holds this Note including EAST BOSTON SAVINGS BANK.

## ESCROW REQUIREMENT

On the Closing Date, Borrower shall deposit with the Bank a sum of money equal to two (2) months of the aggregate estimated annual real estate taxes due in respect of the Mortgaged Property. In addition to other payments herein required, the Borrower shall pay to the Bank monthly on the first of each month, or such other day of the month as may be designated by the Bank during the term hereof an amount of money equal to one-twelfth (1/12th) of the municipal real estate taxes and other assessments which the Bank estimates will become payable on account of the Mortgaged Property for the year next succeeding any period for which such taxes and other assessments have been paid or escrowed hereunder, and/or

2

one-twelfth (1/12ᵗʰ) of the insurance premiums which the Bank estimates will become payable on account of the Mortgaged Property for the year next succeeding any period for which such premiums have been paid or escrowed hereunder, sufficient to enable Bank to accumulate at least thirty (30) days prior to the dates upon which such municipal taxes and assessments or insurance premiums are payable the amounts then due and payable. Further, the Borrower shall pay to the Bank on demand the amount of any deficiency of the funds so collected when the actual amount of such taxes and assessments or insurance premiums become known. The Bank shall maintain such funds in a non-interest-bearing account which may be commingled with other funds of the Bank. The Bank shall apply said funds to the payment of municipal taxes and assessments or insurance premiums, as applicable, to the extent such amounts are determined by the Bank to be due and payable; and the Borrower shall deliver to the Bank the bills representing any such amounts within five (5) days of the receipt thereof by the Borrower. Notwithstanding the provisions of this Section, upon an occurrence of an event which is, or solely with the passage of time, would be, an Event of Default (as defined in the Loan Agreement), the Bank shall not be required to apply such funds as provided above, and may set off such funds against the liabilities and obligations of the Borrower to the Bank and apply any such funds towards such liabilities in accordance with the terms hereof. Failure to satisfy this obligation shall constitute a default on this Note.

**RIGHT OF PREPAYMENT:**

The Borrower may at any time or from time to time prepay all or any part of the outstanding principal amount of the Loan so long as such Prepayment (as hereinafter defined) is accompanied by the Prepayment Fee (as hereinafter defined), subject to the giving of not less than thirty (30) days prior written notice of such Prepayment to the Bank. The "Prepayment Fee" shall be an amount equal to (i) two percent (2.0%) of the principal amount prepaid if such Prepayment is made within the first twelve months (inclusive) of the Loan, and (ii) one percent (1.0%) of the principal amount prepaid if such Prepayment is made during or after the thirteenth through the sixtieth month of the Loan. There will be no Prepayment Fee due if the Prepayment occurs after the sixtieth month of the Loan. Every payment under the Note, in whole or in part, made prior to the due date for such payment, shall be called a "Prepayment." There will be no Prepayment Fee in the event the Bank refinances the Loan or if the Mortgaged Property is sold to a third party which is not an Affiliate of the Borrower on and arm's-length-basis. Any Prepayment Fee due under this Note shall be due whether said Prepayment is voluntary or involuntary, including any Prepayment effected by the Bank's exercise of any right of acceleration. All Prepayments shall be applied to reduce the amount of principal outstanding under the Loan. Prepayments will not result in any changes in the due dates of monthly payments unless the Bank agrees in writing to those changes. The principal amount of the Loan prepaid pursuant may not be re-borrowed by the Borrower. Prepayments will not result in any changes in the due dates of monthly payments unless the Bank agrees in writing to those changes.

**COMMERCIAL TRANSACTION:**

The Borrower and any Guarantors hereby certify, represent and covenant to the Bank that the proceeds and basis of the loan evidenced by the Note are for business and commercial purposes only, and that the proceeds of the Note have not been and/or will not be used for personal (non-business), family, household or agricultural purposes, and this has been relied on by the Bank.

**LATE PAYMENT:**

If any payment is not paid within ten (10) days after its due date, the Borrower shall pay the Holder on demand a late charge of five percent (5%) of the amount overdue. Late charges are not interest and shall not be subject to refund or rebate or credited against any other amount due.

**FAILURE TO PAY AND PERFORM OBLIGATIONS:**

At the Holder's election, this Note shall become immediately due and payable without written notice, demand or protest, which are hereby waived: (i) if any payment of Principal, interest or other amount(s) due under this Note is not paid, subject to all applicable grace periods, when due; (ii) if any obligation under any mortgage, security agreement, assignment of leases and rents, Loan Agreement or other agreement heretofore, now or hereafter executed to secure, or otherwise entered into in connection with the indebtedness evidenced hereby (the same being referred to collectively with this Note, as it may be amended, extended or renewed, as the "Loan Documents") remains unpaid or unperformed, or there is any other default under any Loan Document past any grace period provided therein; (iii) upon any sale or other transfer of any real or personal property which is collateral for this Note except for any sales of Units comprising a condominium, if applicable, which are expressly permitted under and pursuant to the terms of the Loan Documents, or any interest therein, or the sale or other transfer, on one occasion or over time, of fifty percent or more of the stock of any corporate Borrower; (iv) if any party liable to pay this Note or the indebtedness evidenced hereby, whether as Borrower, endorser, guarantor, surety or otherwise, shall die, become incapacitated or be declared incompetent by a court having jurisdiction or shall make an assignment for the benefit of creditors, or if a receiver of any such party's property shall be appointed, or if a petition in bankruptcy or other similar proceeding under any law for relief of debtors shall be filed by or against any such party, and in the case of voluntary proceedings an order for relief is entered or the petition remains undismissed for thirty (30) days; (v) if a lien is filed against the Borrower or any other party or against any parcel of the Mortgaged Property or any other property which is collateral for this Note, and is not discharged within fifteen (15) days; (vi) if any obligation under any other agreement of the Borrower to the Holder now or hereafter executed remains unperformed past any grace period provided therefore; (vii) upon the occurrence of any event of default under any agreement between the Bank and the Borrower, or instrument or paper given the Bank by the Borrower, whether such agreement, instrument or paper given the Bank by the Borrower now exists or hereafter arises (notwithstanding that the Bank may not have exercised its rights upon default under any such other agreement, instrument, or paper) (the liabilities, obligations, indebtedness, and covenants described herein are referred to herein as

4

the "Liabilities"); (viii) any material representation or warranty heretofore, now, or hereafter made by the Borrower and any Guarantor to the Bank, in any document, instrument, agreement, or paper was not true or accurate when given; (ix) the occurrence of any event that would constitute grounds for default under any indebtedness of the Borrower and any Guarantor to any creditor other than the Bank, notwithstanding that a declaration of default has not taken place; (x) the failure by the Borrower and any Guarantor to generally pay the debts of the Borrower and any Guarantor as they mature; (xi) the occurrence of any materially adverse event or circumstance with respect to the Borrower and any Guarantor such that the Bank deems itself insecure; (xii) the entry of any court order which materially enjoins, restrains or in any way prevents the Borrower from conducting all or any part of Borrower's business affairs in the ordinary course; (xiii) The service of any process upon the Bank seeking to attach by mesne or trustee process any funds of the Borrower on deposit with the Bank or with an affiliate of the Bank; (xiv) the occurrence of any loss, theft, damage, or destruction to or of any material portion of the assets of the Borrower and any Guarantor, or the sale (other than sales in the ordinary course of business) or encumbrance to or of any of the assets of the Borrower and any Guarantor; (xv) the death, termination of existence, dissolution, winding up, or liquidation of the Borrower and any Guarantor; (xvi) the merger or consolidation of the Borrower and any Guarantor with or into any other corporation or other entity; and (xvii) The termination of any guaranty by any guarantor of the Liabilities.

Upon any default incurred past any applicable grace period, and also the Maturity Date, interest on all outstanding amounts shall accrue at an annual rate equal to five percentage points (5%) above the Interest Rate.

## HOLDER'S COSTS AND EXPENSES:
The Borrower agrees to pay all costs and expenses incurred by the Holder in connection with this indebtedness, including without limitation all reasonable attorney's fees for implementing this loan and for the collection of this Note and the indebtedness evidenced hereby, and the enforcement of the Holder's rights under this Note and under any Loan Document or guaranty now or hereafter given in connection with this Loan.

## APPLICATION OF PAYMENTS:
Any payments received by the Bank on account of the Note prior to demand or acceleration shall be applied first, to any costs, expenses, or charges then owed the Bank by the Borrower; second, to accrued and unpaid interest; and third to the unpaid principal balance hereof. Any payments so received after demand or acceleration shall be applied in such manner as the Bank may determine in the Bank's sole discretion.

## RESPONSIBILITY OF PERSONS:

5

The Borrower and every other party liable on this Note, whether as endorser, guarantor, surety or otherwise: (a) agrees to be jointly and severally bound by all of the terms and conditions of this Note and every Loan Document; (b) waives presentment, demand, protest suretyship defenses and all other defenses in the nature thereof; (c) waives any defenses based upon, and specifically assents to any and all extensions and postponements of the time for payment, changes in terms and conditions and all other indulgences and forbearances which may be granted by the Holder to any party now or hereafter liable under this Note or to any guarantor thereof; and (d) agrees to any substitution, exchange, release, surrender or other delivery of any collateral now or hereafter securing this Note, and to the addition or release of any other person primarily or secondarily liable under this Note or any other Loan Document or guaranty now or hereafter given in connection with this Loan.

## WAIVER; CHANGES:

No delay or omission by the Holder in exercising any right under this Note or under any Loan Document shall operate as a waiver of such right, or of any other right of the Holder, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to or waiver of the same or of any other right on any future occasion. This Note may be changed only by an agreement in writing.

## BANK'S SET-OFF RIGHTS

Any and all now existing and/or hereafter arising deposits, or other sums at any time credited by or due to, the Borrower and/or any Guarantor from the Bank including without limitation, being a participant under the Note, if at all, and any now existing and/or hereafter arising monies, securities, instruments, certificates, repurchase agreements, and/or other property of the Borrower and any Guarantor in the possession of the Bank, regardless of the reason the Bank had received same, shall at all times constitute security for the Liabilities including the Note, and/or for any endorsement of the Note and/or guaranty by any Guarantor (said endorsement of the Note and/or guaranty by any Guarantor hereinafter called "Guaranty Obligations"), and may be held, applied and/or set off by the Bank against the Liabilities and/or Guaranty Obligations at any time when due, whether or not other collateral is held by or otherwise available to the Bank, Whether such collateral be security in full or in part. Without limitation, and in addition to the foregoing, in the event the Bank at any times or times hereafter is served with trustee process of an kind which attach or order any payment from any goods, effects and/or credits of the Borrower and Guarantor in the hands or possession of the Bank, then the Bank, without notice or demand to the Borrower and any guarantor may deem the dollar amount set forth in the trustee process as becoming immediately due and payable under the Note, any endorsement and/or guaranty by any Guarantor, and/or any other loan arrangement with the borrowers, and set off said amount against any Deposits being held by the Bank, and any such payment made by said setoff shall be applied as the Bank shall in its sole discretion determine and when applied to any outstanding principal, may be applied in inverse order of maturity, the borrower and any Guarantor hereby grant to the Bank a security interest in

6

the Deposits to secure all obligations of the Borrower and Guarantor, or any one or more persons or entities comprising the Borrower and any Guarantor, to the Bank under the Liabilities and/or the Guaranty Obligations.  The Borrower and any Guarantor hereby authorize the Bank to charge the Deposits which the Borrower and any Guarantor may at any time maintain with the Bank for any payment due on account of the Liabilities and/or the Guaranty Obligations.  The Borrower and any Guarantor agree that the rights to setoff against Deposits and to charge Deposits granted herein by the Borrower and any Guarantor to the Bank;  (a) are irrespective of the source or contributor(s) of funds or other property which comprise the Deposits, whether or not the Deposits, Liabilities and/or Guaranty Obligations are (I) individual and/or joint of the Borrower and any Guarantor, or any one or more persons or entities comprising the Borrower and any Guarantor, and/or (ii) in the name of or by the Borrower and any Guarantor, or any one or more persons or entities comprising the Borrower and any Guarantor, with another or others; and (b) are at the option of the Bank, and in no event is the Bank under a duty to exercise setoff against Deposits or to charge Deposits.

## CHOICE OF LAW AND AGREED LIMITATION ON ACTION

In the event at any times the Borrower and any Guarantor has a claim, cause of action, setoff, defense, counterclaim or third party claim (collectively "Borrower Claim") against the Bank, the Borrower and any Guarantor agrees to commence a lawsuit and/or other proceeding on the Borrower Claim against the Bank only in Suffolk County, Massachusetts, or such place where the Bank has its principal place of business, and only within a period of one year from the time the Borrower Claim first arises, or such other minimum period permitted by law in the event the court finds the one-year period insufficient.

## RELATIONSHIP BETWEEN BORROWER AND GUARANTORS

The Borrower agrees not to seek or accept contribution, reimbursement, indemnity, subrogation or endorsement of any rights from anyone also obligated under the Note, as maker, guarantor, endorser or otherwise, if at all; and any Guarantor agrees not to seek or accept contribution, reimbursement, indemnity, subrogation or enforcement of any rights from the Borrower, and any other guarantor or endorser hereof, or anyone otherwise obligated under the Note; all the foregoing in this paragraph until all obligations under the Note are paid in full and no claim whatsoever exists and/or may exist against the Bank for repayment, a preference payment in bankruptcy, or otherwise in connection with the Borrower and any Guarantor.

The Borrower and any Guarantor agree to indemnify, defend and hold harmless the bank, and/or any officer, director and/or employee of the Bank of and from any claim or claims now existing, hereafter arising and/or hereafter brought and/or threatened by the Borrower and any Guarantor or by any other person or entity in connection therewith, on account of or relating to any relationship and/or dealings with

7

the Borrower and any Guarantor, including without limitation any person or entity contesting the validity or priority of any mortgage(s) and/or other collateral granted to the Bank.

## COSTS OF COLLECTION

The Borrower and any Guarantor agree to promptly pay to the Bank for all legal services hereafter rendered to the Bank including all time, legal fees and expenses, in connection with the review, drafting, preparation for enforcement, negotiation, enforcement, amendment, extension, substitution and/or modification of the Note, any endorsement and/or guaranty thereof, any endorsement and/or guaranty of the obligations of the Borrower to the Bank, any Loan Documents, any other instruments securing or otherwise relating to the Note, any other matters relating to the collection of the loan proceeds and/or realization on any collateral given to the Bank, any bankruptcy and/or foreclosure proceedings, procedures and expenses which relate to the Borrower and any Guarantor and/or remedies of the Bank, whether now existing and/or hereafter arising against the Borrower and any Guarantor and/or any collateral given by the Borrower an any Guarantor to the Bank, whether or not any court proceedings are brought. The responsibility set forth anywhere in the Note of Borrower and any Guarantor to pay for the attorneys times, legal fees and expenses of the Bank shall include both outside counsel engaged by the bank, and any in-house counsel employed by the Bank at the same rate as comparable outside counsel.

## WAIVERS OF RIGHTS BY BORROWER AND GUARANTORS

IN ANY CASE, CONTROVERSY OR MATTER WHICH ARISES OUT OF, OR IS IN RESPECT OF, THE NOTE AND/OR LOAN EVIDENCING THEREBY, ANY LOAN DOCUMENTS, ANY COLLATERAL SECURING THE NOTE, ANY OTHER INSTRUMENT IN CONNECTION WITH THE NOTE, AND/OR ANY OTHER BUSINESS RELATIONSHIP OR TRANSACTION BETWEEN THE BANK WITH THE BORROWER AND ANY GUARANTOR, WHETHER NOW EXISTING OR HEREAFTER ARISING, THE BORROWER AND ANY GUARANTOR KNOWINGLY, VOLUNTARILY AND INTENTIONALLY:  (A) WAIVE ANY RIGHT TO AND AGREE NOT TO BRING, COMMENCE OR OTHERWISE TAKE ANY ACTION TO TRANSFER, ANY PROCEEDING INCLUDING WITHOUT LIMITATION COURT ACTION, ARBITRATION, MEDIATION, ADMINISTRATIVE PROCEEDING OR OTHERWISE AGAINST THE BANK OTHER THAN IN THE COMMONWEALTH OF MASSACHUSETTS;  (B) WAIVE ANY NOW EXISTING AND/OR HEREAFTER ARISING RIGHT TO A TRIAL BY JURY;  (C) WAIVE ANY NOW EXISTING AND/OR HEREAFTER ARISING RIGHT TO ANY CONSEQUENTIAL, PUNITIVE, SPECIAL, EXEMPLARY AND/OR INCIDENTAL DAMAGES.

## FINANCIAL RECORDS OF BORROWER AND GUARANTORS

The Borrower and any Guarantor shall maintain full and accurate books and records showing in detail the income and expenses, and assets and liabilities, of the Borrower and any Guarantor and any mortgaged property which may secure the Note and/or any endorsement and/or guaranty by any Guarantor; and

8

upon request from the Bank, and upon reasonable notice, shall permit the Bank and/or its representatives to examine and make copies of the books and records of the Borrower and any Guarantor. The Borrower and any Guarantor shall deliver to the Bank annual financial statements including without limitation a statement of assets, liabilities and net worth.

## HAZARDOUS WASTE

At all times when the security for the Note and/or any endorsement and/or any guaranty by any Guarantor includes real estate, the Borrower and any Guarantor agree that the Bank and its representatives shall have the right at any time hereafter to enter the mortgaged property upon reasonable notice and at reasonable times (a) for purposes of inspecting and testing for hazardous materials and oils to determine whether or not the property violate any provisions of MGL Ch. 21E and regulations relating thereto, and/or (b) for purposes of appraising the mortgaged property.

## CROSS-DEFAULT AND CROSS-COLLATERALIZATION

Any default under the Note shall be a default by the Borrower and any Guarantor under any other promissory note and/or other instrument by the Borrower and any Guarantor to the Bank, now existing or hereafter arising. Any default by the Borrower under any other promissory note and/or other instrument by the Borrower and any Guarantor to the Bank, now existing or hereafter arising, shall be a default under the Note and Loan Documents. All mortgages and/or other collateral from the Borrower to the Bank, if any, now existing or hereafter arising, shall also secure the obligations of the Borrower under the Note. All mortgages and/or other collateral, if any, which secure the Note shall also secure all promissory notes and other obligations of the Borrower to the Bank, now existing or hereafter arising, whereof individual and/or joint of the Borrower, or any one or more persons or entities comprising the Borrower.

## BANK'S OPTIONS UPON THE MATURITY, ACCELERATION OR DEMAND

AT THE DUE DATE OF THE NOTE (AT MATURITY, UPON EARLIER ACCELERATION, OR IN THE EVENT THE NOTE IS A DEMAND NOTE), THE BANK MAY DEMAND PAYMENT OF THE NOTE, MAY REWRITE THE NOTE BY AGREEMENT AT A GREATER OR LESSER RATE OF INTEREST, OR MAY, BY AGREEMENT, ALLOW PAYMENTS TO BE MADE ON SAID NOTE AT THE SAME, OR A LESSER OR A GREATER RATE OF INTEREST, IF AT ALL. THE LOAN IS PAYABLE IN FULL AT MATURITY, UPON EARLIER ACCELERATION, OR IN THE EVENT THE NOTE IS A DEMAND NOTE. THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST WHEN DUE. THE BANK IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. THE BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THE BORROWER MAY OWN, OR WILL HAVE TO FIND ANOTHER BANK OR LENDER WILLING TO LEND THE BORROWER THE MONEY AT PREVAILING MARKET RATES, WHICH MAY BE CONSIDERABLY HIGHER THAN THE INTEREST RATE ON THE LOAN.

9

## ESTOPPEL DOCUMENTS

Within fifteen (15) days after requested by the Bank by notice to the Borrower, Borrower and any Guarantor agree to execute and deliver to the Bank a written statement addressed to the Bank and signed by the Borrower and any Guarantor under the penalties of perjury, and duly notarized, acknowledging the principal and interest balances then due under the Note, and further acknowledging that the Note is in full force and effect and unmodified, that the Borrower and any Guarantor have no defenses, offsets, or counterclaims to the payment and/or performance of the obligations of the Borrower and any Guarantor under the Note, and have no claims or causes of action of any kind whatsoever then existing against the Bank, and a statement that the Bank is not in default under the Note or any loan or other agreement relating to the Note or any obligations evidenced thereby, all the foregoing in this sentence except as may otherwise exist in which event the Borrower shall specify what otherwise exists, and a statement regarding such other matters which the Bank may require.

## CHANGE IN SECURITY OR FINANCIAL CONDITION OF BORROWER OR GUARANTORS

In the event that prior to the recording of any mortgage, financing statement or other collateral instrument, if any, given herewith by the Borrower and any Guarantor to the Bank, there shall exist or otherwise be made known to the Bank any voluntary or involuntary creation or occurrence, of any encumbrance, mortgage, lien, attachment, or other security interest on or in any real or personal property given herewith by the Borrower and any Guarantor as collateral to the Bank, or any portion thereof (except as otherwise specifically permitted, of at all, in any of the Loan Documents), or the transfer of such real or personal property or any portion thereof or any legal or beneficial interest therein, or the Borrower and any Guarantor become the subject of a bankruptcy petition, assignment for the benefit of creditors, or any arrangement with creditors, or any restraining order or injunction exists against the Borrower and any Guarantor, at the option of the Bank all obligations of the Bank to make against the Borrower and any Guarantor, at the option of the Bank all obligations of the Bank to make the loan and/or advance monies pursuant to any loan agreement, of which the Note evidences the loan in whole or in part, shall be void, and the Note shall become immediately due and payable without notice or demand to the extent of all monies due thereunder which have previously been paid by the Bank.

## LEGAL PRESENTATION

The Borrower and any Guarantor acknowledge that the Bank has notified and does hereby notify the Borrower and any Guarantor as follows:

(a) THE RESPONSIBILITY OF THE ATTORNEY FOR THE BANK IS TO PROTECT THE INTEREST OF THE BANK.

(b) THE BORROWER AND ANY GUARANTOR MAY, AT BORROWER'S OR GUARANTOR'S OWN EXPENSE, ENGAGE AN ATTORNEY OF THEIR OWN SELECTION TO REPRESENT THE BORROWER'S OR GUARANTOR'S OWN INTERESTS IN THE TRANSACTION.

**NOTICE:**

Any notice will be duly given under this Note if delivered in hand or mailed by certified mail to the addressee at the address set forth in this Note or to such other address of which notice has been given in the manner described above.

**ENFORCEABILITY OF THIS NOTE:**

The determination that one or more provisions of this Note are invalid or unenforceable under law shall not effect the validity or enforceability of the remaining provisions of the Note. Notwithstanding anything contained in this Note or any other Loan Document, the maximum amount of interest and other charges to be paid shall not exceed the maximum amount permitted by law as determined by the final judgment, with appeals exhausted, of a court having jurisdiction.

[The next page is the signature page.]

11

Executed as a sealed instrument under Massachusetts law.

BORROWER

GABHALTAIS TEAGHLAIGH LLC

Witness

William Gately, Manager